Filed 1/13/25

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331017 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA102203) |
| v. | |
| LAMAR LOVE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael D. Abzug, Judge. Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In 1995, a jury convicted Lamar Love of second degree murder.  Love now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1]  The record of conviction establishes Love is ineligible for resentencing as a matter of law because he was convicted as the actual killer and not under any abrogated theory of liability.  We therefore affirm the order.

---

[1]     All undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We therefore refer to the statute as section 1172.6 for the remainder of this opinion.

# BACKGROUND

***The Underlying Offense[2]***

Gary Love was born in March 1992 to Love and Sonya Thomas. Sonya's mother, Geraldine Thomas, cared for Gary full time from his birth until his death.[3]

In late October 1993, Love and Gary arrived at Geraldine's house. "Gary was screaming and crying, and his clothes were torn off his shoulder. His pants were soaking wet and he did not have a diaper on. There was a scratch by Gary's left eye. When [Geraldine] asked what had happened, Love said Sonya had left him at the mall with Gary, that Gary had almost fallen down the escalator and Love had had to grab him to prevent the fall. Love said, referring to Gary, 'that old crybaby.' "

Shortly after Thanksgiving in 1993, Sonya, Gary, and Love went to the mall, and Sonya left Gary and Love in the car while she went inside. "When Sonya returned, she saw Gary had a

---

[2] We derive our factual and procedural background of this case from the nonpublished opinion affirming Love's judgment of conviction, *People v. Love* (Oct. 29, 1996, B095115). (See *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [appellate opinion generally part of record of conviction as applied to § 1172.6 proceedings].) However, "we need not credit the truth of any fact" to decide this appeal. (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1167, review granted May 1, 2024, S284232.) We reference the factual portion only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) To the extent necessary to render our decision, we consider the procedural history of Love's prior appeal, as permitted by the statute. (§ 1172.6, subd. (d)(3).)

[3] For the sake of clarity we refer to Gary, Sonya, and Geraldine by first name only. No disrespect is intended.

3

knot on his forehead.  Love explained Gary had hurt himself while trying to climb out of the car seat."

The next day, Geraldine "noticed Gary had a fresh scar on his face.  When she was told Gary had fallen while in Love's care, [Geraldine] confronted Love, telling him that every time he was with the child, Gary fell down.  Love replied that all of his children were always falling."

Later that day, Love, Sonya, and Gary checked in to a motel.  Sonya left to get something to eat for Gary.  While Sonya was out, Jessie Tarayan, who was in a nearby motel room, heard "the sound of a baby screaming" and "two or three thumping sounds" from the room where Love, Sonya, and Gary were staying.  Tarayan stepped outside but did not see anything.  "About ten minutes later, Love came to her door, 'screaming and going crazy, telling [Tarayan] that his baby had fell down the stairs'" and fell on his head.  "Love went and got the baby and brought him to Tarayan's room.  Gary's eyes were rolling back in his head.  Just then, Sonya returned.  Love went to the motel manager's office, carrying Gary; he said Gary had fallen on the stairway."  They called the fire department and a paramedic took Gary to a hospital, where Gary died soon after from his injuries.

According to an autopsy, Gary's death was caused by "blunt force trauma to the abdomen."  His injuries "had to be the result of substantial force such as a hard punch or kick, or the body being forcefully thrown against another surface," and "were not consistent with falling down a flight of stairs."

Love later "threatened [Tarayan] and beat her up because he believed she told police he had killed Gary."  He was arrested nearly a year after Gary's death.

4

### *The Charges and Conviction*

In February 1995, the People charged Love with Gary's murder (§ 187, subd. (a); count 1), one count of felony child abuse resulting in death which occurred the same day as the murder (§ 273a, subd. (a)(1); count 2), two additional counts of felony child abuse which occurred on earlier dates (§ 273a, subd. (a)(1); counts 3 and 4), spousal abuse (§ 273.5, subd. (a); count 5), assaulting Tarayan with a deadly weapon (§ 245, subd. (a)(1); count 6), and dissuading a witness, Tarayan, by force or threat (§ 136.1, subd. (c)(1); count 7). No other defendants were named in the information.[4]

At trial, the court instructed the jury on murder (CALJIC No. 8.10), second degree murder (CALJIC Nos. 8.30, 8.31), and

---

[4] Five months passed between the filing of the information and Love's trial, and there is no indication from the record on appeal that in the over thirty years since Gary's death, the People sought to charge Sonya or anyone else in connection with his murder. We recognize that another division of this court recently found that a "single charging document does not foreclose the possibility of other people having been charged for related crimes." (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339.) However, in *Estrada*, the preliminary hearing transcript suggested that "multiple perpetrators were involved," including evidence of two other people "with blood on their clothes" one of whom "carried a box cutter." (*Id.* at p. 340.) The evidence thus indicated that someone other than Estrada may have been the direct perpetrator. (*Id.* at p. 341.) In contrast, here, nothing in the record of conviction suggests the involvement of an additional perpetrator. Indeed, Love's jury was not provided with CALJIC No. 2.11.5, which instructs that "[t]here has been evidence . . . indicating that a person other than [the] defendant . . . may have been involved in the crime[s] for which that defendant is on

5

express and implied malice (CALJIC No. 8.11). The court separately instructed the jury on child abuse (CALJIC No. 9.37) and criminal negligence (CALJIC No. 3.36). The jury was not instructed on the principles of aiding and abetting liability, felony murder, or the natural and probable consequences doctrine.

In July 1995, a jury convicted Love of second degree murder, spousal abuse, and one count of child abuse resulting in death that occurred the same day as the murder, and found him not guilty of the remaining counts. The trial court sentenced Love to an indeterminate term of 15 years to life for second degree murder, a stayed term for child abuse, and a concurrent term of four years for spousal abuse. Love appealed the conviction and a different panel of this Division affirmed in *People v. Love*, *supra*, B095115.

**Love's Petition for Resentencing**

In 2022, Love filed a pro per petition for resentencing under section 1172.6, alleging he could not presently be convicted of murder because of changes to sections 188 and 189. The trial court appointed counsel for Love.

The People's response to the petition argued that Love was ineligible for resentencing because the jury was not instructed on felony murder, the natural and probable consequences doctrine, aiding and abetting liability, or any theory of imputed malice. The response attached the jury instructions and verdict form. Love did not file a reply.

In May 2023, the trial court held a hearing on Love's petition during which Love appeared remotely and was represented by counsel. Love submitted on his petition. The trial

___

trial," but admonishes the jury not to speculate why that other person is not on trial with the defendant.

6

court denied the petition because "the jury was not instructed on felony murder, natural and probable consequences or any other theory that imputed malice to the Petitioner."

Love timely appealed.

## DISCUSSION

### I.  Senate Bill Nos. 1437 and 775 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *Lewis*, *supra*, 11 Cal.5th at p. 957.)  The bill amended section 188 by adding the requirement that, outside of felony murder, "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)

Among other things, Senate Bill No. 775 expanded Senate Bill No. 1437's mandate by eliminating any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" as a means of finding a defendant guilty of murder.  (§ 1172.6, subd. (a).)  However, "Senate Bill 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' "  (*Strong*, *supra*, 13 Cal.5th at p. 710.)

Taken together, Senate Bill Nos. 1437 and 775 created a procedure, now codified at section 1172.6, to allow a person convicted of murder under the former law to seek resentencing if the person could no longer be convicted under amended section

7

188.  (*Lewis*, *supra*, 11 Cal.5th at p. 959.)  A defendant starts the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  "After the parties have had an opportunity to submit briefings," the statute requires the court to "hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1172.6, subd. (c).)

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' "  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited."  (*Ibid*.)  Courts may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id*. at pp. 971–972.)  However, "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."  (*Strong, supra,* 13 Cal.5th at p. 708.)

We review de novo a trial court's denial of a resentencing petition at the prima facie stage.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## II. The Record of Conviction Established That Love Was Ineligible for Resentencing

Love was charged as the sole perpetrator of Gary's murder and convicted of second degree murder. The jury was instructed that Love was accused of committing murder, i.e., killing another human being with malice aforethought (CALJIC No. 8.10), and that second degree murder occurs when the defendant harbors express or implied malice (CALJIC Nos. 8.30, 8.31, 8.11). The jury was not instructed on felony murder, the natural and probable consequences doctrine, aiding and abetting liability, or any other theory of imputed malice. Thus, the record of conviction establishes that Love was convicted as the actual killer who personally harbored malice, and not under any abrogated theory of liability. (*Strong, supra*, 13 Cal.5th at p. 710 ["Senate Bill 1437 relief is unavailable if the defendant was . . . the actual killer"].)[5]

---

[5] Love argues in this appeal that Sonya may have killed Gary, citing "facts" recited in the nonpublished opinion affirming Love's conviction—specifically, that Sonya was alone with Gary for part of the time period during which an expert testified Gary had suffered his fatal injuries. However, that prior opinion also rejected Love's earlier appellate contention that the jury should have been instructed on the lesser included charge of voluntary manslaughter in light of "Love['s] argu[ment] [that] there was substantial evidence he punched or kicked Gary in the stomach in the heat of passion because Gary's crying made him angry" and that Love's "hysteri[a] . . . suggests he 'was very remorseful . . . for having . . . struck Gary in the stomach.'" Regardless, "[p]rior appellate opinions that are part of a section 1172.6 petitioner's 'record of conviction,' which were once admissible . . . at a merits hearing under former section

Love nonetheless argues that "the jury instructions, *as a whole*," were "convoluted."  In particular, he contends that the instruction defining criminal negligence (CALJIC No. 3.36) was similar to the instruction on implied malice second degree murder (CALJIC No. 8.31).  According to Love, this similarity may have permitted the jury to convict him of murder after finding that he was criminally negligent, and by imputing malice to him based solely on his participation in child abuse resulting in death.  We disagree.

To start, while Love repeatedly argues that the jury may have imputed malice to him, he fails to identify the original source of the malice that he asserts was imputed to him.  Love was prosecuted alone, and nothing in the record supports that anyone else was involved in Gary's death.[6]  To the extent Love means to argue that the natural and probable consequences doctrine or any other theory of imputed malice could apply to a sole perpetrator, that argument fails, as these abrogated theories necessarily require a second participant.  (*People v. Prettyman* (1996) 14 Cal.4th 248, 260 [natural and probable consequences doctrine applies only to aiders and abettors]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 231–232 ["Whereas implied malice is

_____

1170.95—including for their recitations of fact [citation]—may now be considered only for their 'procedural history.' " (*People v. Davenport* (2023) 95 Cal.App.5th 1150, 1160, fn. 5.)

**6**     While Love argues that Sonya may have caused Gary's injuries, he does not contend that the jury may have imputed malice to him from Sonya.  Even if Love had raised such an argument on appeal, as discussed, the instructions in this case did not permit the jury to rely upon any theory of imputed malice nor did it inform them of the existence of an unjoined perpetrator.

based on 'the "natural and probable consequences" of a defendant's *own* act,' " the natural and probable consequences doctrine is a theory of vicarious liability involving a principal and an aider and abettor].)

Moreover, contrary to Love's assertion, the instructions in this case were not confusing. As Love acknowledges, the court in *People v. Carr* (2023) 90 Cal.App.5th 136 (*Carr*) rejected a similar argument and we find its reasoning persuasive. In *Carr*, as here, the jury was not instructed on any abrogated theory and the petitioner was convicted of second degree murder. (*Id*. at pp. 140–141.) The trial court denied the defendant's petition for resentencing at the prima facie stage. (*Id*. at p. 141.) On appeal, the petitioner argued that the jury may have combined CALJIC Nos. 8.11 and 8.31, the implied malice second degree murder instructions, with CALJIC No. 8.46, which defined "without due caution and circumspection," a term used in the instruction on the lesser included offense of involuntary manslaughter. (*Carr,* at p. 145.) The petitioner argued that the jury may have convicted him based on the CALJIC No. 8.46 standard, i.e., without a finding of malice. The appellate court rejected this argument, reasoning that CALJIC No. 8.46 "did not relate to implied malice or second degree murder at all," leaving "no reasonable probability that the jury combined [the unrelated jury instructions] in the manner that petitioner suggests." (*Carr,* at p. 146). As the court in *Carr* reiterated, "[i]mplied malice is not imputed malice." (*Id*. at p. 139.)[7]

---

[7] In *Carr*, the appellate court recognized that the legislature did not remove implied malice as a basis for a second degree murder conviction, reiterating that Senate Bill No. 1437

11

Love similarly argues that the jury in this case may have convicted him of second degree murder by using the criminal negligence standard described in CALJIC No. 3.36. However, CALJIC No. 3.36 defined criminal negligence, a term used in the instruction on the three counts of child abuse (CALJIC No. 9.37), and "did not relate to implied malice or second degree murder at all." (*Carr*, *supra*, 90 Cal.App.5th at p. 146.) The second degree murder instructions (CALJIC Nos. 8.30 and 8.31) required the jury to find that Love personally harbored express or implied

---

" 'maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged. [Citation.]' " (*Carr*, *supra*, 90 Cal.App.5th at p. 144.) Nor was the court persuaded by Carr's arguments that subsequent statutory amendments contained in section 1172.6 should affect its analysis, especially in a case like Carr's which did "not involve the imputation of malice." (*Carr*, at p. 144.) The court's conclusion in *Carr* is consistent with the legislative history of the original bill, whose purpose was " 'to restore proportional responsibility in the application of California's murder statute' (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Apr. 24, 2018, p. 3) by eliminating harsh sentences for defendants who played only a relatively minor role in a felony in which a victim was killed, while still retaining murder liability for more culpable defendants." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1143–1144, review granted Oct. 14, 2020, S264284, disapproved on other grounds in *Strong*, *supra*, 13 Cal.5th 698.) Love does not appear to raise such an argument here. If he did, we would reject it for the reasons articulated in *Carr*, *supra*, at page 144.

malice before convicting him of that crime.[8]  Neither instruction permitted the jury to convict him of murder in count 1 using the criminal negligence standard from a completely different instruction.  Moreover, CALJIC Nos. 3.31 and 3.31.5 separately informed the jury that the "mental state" required to convict Love of murder would be "included in the definition of the crime set forth elsewhere in these instructions," and the mental state instructions for the murder charge were separate from the mental state instruction for counts 2 through 6—CALJIC No. 3.30.  We presume that the jury understood and followed the court's instructions in reaching its verdict.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)  Thus, "there is no reasonable probability that the jury combined" the second degree murder

---

[8]     Under the section of Love's instructions entitled "CRIMES," those relating to murder were all grouped together.  The first instruction in that section, CALJIC No. 8.00, defined homicide; the next instruction—CALJIC No. 8.10—informed the jury that Love "is accused in Count 1 of having committed the crime of murder," and that murder was the "unlawful[] kill[ing] [of] a human being with malice aforethought . . . ."  The next instruction—CALJIC No. 8.11—explained to the jury that malice could be express or implied.  The last instruction in the group— CALJIC No. 3.40 dealing with causation—again referenced the "crime of murder."  The instruction that followed referenced only count 6 and was followed by three additional instructions related to that count.  The next instruction referenced only count 5.  It was not until the instruction that followed—CALJIC No. 9.37, which specifically referenced only counts 2, 3, and 4—that the term "criminal negligence" first appeared in the jury instructions.  That instruction was followed by CALJIC No. 3.36, which defined "Criminal negligence."

instructions with the criminal negligence standard as Love contends. (*Carr*, at p. 146.)

Love argues *Carr* is distinguishable because the jury in that case was not instructed on child abuse or criminal negligence. However, while the instructions in *Carr* were not precisely the same as those in this case, just like the challenged instruction in *Carr*, the criminal negligence instruction in Love's case "did not relate to implied malice or second degree murder at all." (*Carr*, *supra*, 90 Cal.App.5th at p. 146.) Thus, as we have discussed, the jury had no basis to find Love guilty of second degree murder based on a standard from an unrelated instruction for a different charge.

Love also attempts to distinguish *Carr* by arguing that the defendant in that case was the actual killer. He contends that the jury made no finding as to whether he "actually assaulted, or battered" Gary, and therefore the record of conviction does not foreclose the possibility that Sonya may have caused Gary's injuries.[9] Yet, even without any specific findings regarding Love's actions, as we have discussed, the record of conviction establishes that Love was convicted as the actual killer. In any case, the appellate court in *Carr* concluded that the defendant was ineligible for relief because the instructions did not permit the jury to convict the defendant under any abrogated theory. (*Carr*, *supra*, 90 Cal.App.5th at pp. 143–146.) Similarly, even if the record in this case did not conclusively establish that Love was the actual killer, the jury instructions and verdicts foreclose the possibility that he was convicted under any now-invalid

---

[9] Love also cites the nonpublished opinion affirming his judgment of conviction. As we have discussed, we decline to consider the facts recited therein. (*Ante*, fn. 5.)

theory.  Love was therefore ineligible for resentencing as a matter of law.

## DISPOSITION

The May 17, 2023, order denying Love's petition for resentencing is affirmed.

## CERTIFIED FOR PUBLICATION

BERSHON, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.